UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-11733-RGS

HSBC REALTY CREDIT CORPORATION (USA)

v.

J. BRIAN O'NEILL

MEMORANDUM AND ORDER ON PLAINTIFF HSBC'S
MOTION FOR JUDGMENT ON THE PLEADINGS

January 30, 2013

STEARNS, D.J.

On September 24, 2012, plaintiff HSBC Realty Credit Corporation (USA)

("HSBC") brought this lawsuit against defendant J. Brian O'Neill to recover monies

due under O'Neill's guaranty of a loan made by HSBC to Brandywine Partners, LLC

("Brandywine").  Before the court is HSBC's motion for judgment on the pleadings.

BACKGROUND

The facts, in the light most favorable to O'Neill as the non-moving party, are

as follows.  HSBC is a Delaware corporation with its principal place of business in

New York.  Compl. ¶ 1.  O'Neill is domiciled in the Commonwealth of Pennsylvania.

*Id.* ¶ 2.  On August 20, 2007, HSBC entered into a Project Loan Agreement with

Brandywine, pursuant to which HSBC loaned Brandywine the principal sum of

$15,900,000.00.  *Id.* ¶¶ 6-7.  Brandywine's repayment obligation was memorialized in a promissory note dated the same day.  Compl., Ex. B.

Brandywine took the loan to purchase abandoned industrial property in Wilmington, Delaware, and redevelop it as residential housing.  *See* Countercl. ¶ 7. To convert the property to residential use, Brandywine was required to surmount a number of environmental hurdles and, after reviewing the results of a self-commissioned safety study, decided that the most efficient course was to demolish the existing buildings and start from scratch.  *Id.* ¶¶ 19-42.  After its own assessment of Brandywine's proposal, HSBC valued the Wilmington property at $26,500,000.00.[1]  *Id.* ¶¶ 16, 42.  Brandywine agreed to a mortgage on the property as security, together with the pledge of "all the personal property of [Brandywine]." Countercl. ¶ 6, Ex. 2 (Schedule A).  The Project Loan Agreement further states:

> [Brandywine] acknowledges that [HSBC] ha[s] a valid interest in maintaining the value of the Property so as to ensure that, should [Brandywine] default in the repayment and performance of the Obligations under the Project Loan Documents, [HSBC] can recover the Obligations by a sale of the Property.

Project Loan Agreement § 6.1, Compl., Ex. A, at 58.

As required by the Project Loan Agreement, O'Neill executed a "Guaranty of

---

[1] The figure is calculated by O'Neill by extrapolating from a provision in the Project Loan Agreement that requires a Loan-to-Value Ratio of 60 percent.  *See* Project Loan Agreement, Compl., Ex. A, at 26-27.

Payment" ("Guaranty") that is also dated August 20, 2007.  Compl. ¶ 9, Countercl.
¶ 9.  The Guaranty states that O'Neill has a "direct or indirect interest in
[Brandywine] and [that O'Neill] will directly benefit" from HSBC's loan to
Brandywine, and further that HSBC "is not willing to make the Loan . . . unless
[O'Neill] unconditionally guarantees payment and performance . . . ."  Guaranty,
Compl., Ex. C, at 1.  A provision entitled "Guaranty of Obligation" states that
"[s]ubject to the limitations contained in Section 6.15, [O'Neill] hereby irrevocably,
absolutely and unconditionally guarantees to [HSBC] . . . performance of the
Guaranteed Obligations as and when the same shall be due and payable . . . . [O'Neill]
hereby irrevocably and unconditionally covenants and agrees that [he] is liable for the
Guaranteed Obligations as a primary obligor."[2]  *Id.* § 1.1, at 1.  Section 6.15 of the
Guaranty places a cap on O'Neill's personal liability at $8,100,000.  *Id.* § 6.15, at 16.

To further "induce" HSBC to make the loan, O'Neill "represent[ed] and
warrant[ed]" that he was personally familiar with the value of the property offered as
collateral for the loan, and that the pledge of the collateral was not an inducement to
enter the Guaranty.  *Id.* § 3.2, at 7.  O'Neill also represented that HSBC did not make
any "representation, warranty or statement" to induce him to execute the Guaranty.

---

[2] "Guaranteed Obligations" is defined as the "prompt and unconditional
payment by [Brandywine] of the Loan and interest thereon . . . ."  *Id.* § 1.2, at 2.

*Id.* § 3.3, at 7.

The Guaranty additionally includes (as will become pertinent), a section titled

"No Duty to Pursue Others":

> It shall not be necessary for [HSBC] (and [O'Neill] hereby waives any rights which [O'Neill] may have to require [HSBC]), in order to enforce the obligations of [O'Neill] hereunder, first to (I) institute suit or exhaust its remedies against [Brandywine] or others liable on the Loan or the Guaranteed Obligations or any other person, (ii) enforce [HSBC's] rights against any collateral which shall ever have been given to secure the Loan . . . (v) exhaust any remedies available to [HSBC] against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations. [HSBC] shall [not] be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.

*Id.* § 1.6, at 3-4. O'Neill also waived "any common law, equitable, statutory or other

rights" he might have with regard to any actions taken with respect to the loan or

collateral that "increases the likelihood [O'Neill] will be required to pay the

Guaranteed Obligations . . . ." *Id.* § 2.13, at 5, 7. Finally, the Guaranty contains an

integration clause stating that the document is a "final and complete" expression of

the terms of the Guaranty, and that no extrinsic evidence of any nature shall be used

to contradict or modify its terms. *Id.* § 6.11, at 14.

Brandywine failed to repay the principal of the loan on or before the stipulated

April 20, 2009 due date. On May 15, 2012, HSBC sent a letter to Brandywine and

4

O'Neill,  demanding payment in full as well as the immediate payment of O'Neill's

$8,100,000 liability under the  Guaranty.  Demand Letter #1, Compl., Ex. D.  HSBC

sent a second demand letter on August 23, 2012.  Demand Letter #2, Compl., Ex. E.

O'Neill did not make good on any portion of his personal Guaranty leading to this

lawsuit.  Jurisdiction is asserted in this court under the diversity statute, 28 U.S.C. §

1332, and the forum selection clause of the Guaranty.[3]

## DISCUSSION

Rule 12(c) permits a party to move for judgment on the pleadings at any time

"[a]fter the pleadings are closed," as long as the motion does not delay the trial.  Fed.

R. Civ. P. 12(c).  A Rule 12(c) motion differs from a Rule 12(b)(6) motion in that it

implicates the pleadings as a whole.  "In the archetypical case, the fate of such a

motion will depend upon whether the pleadings, taken as a whole, reveal any

potential dispute about one or more of the material facts."  *Gulf Coast Bank & Trust*

*Co. v. Reder*, 355 F.3d 35, 38 (1st Cir. 2004).  "Because [a Rule 12(c)] motion calls

for an assessment of the merits of the case at an embryonic stage, the court must view

---

[3] Forum selection clauses, like the one in the Guaranty, are binding on the parties to a contract. *See Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 18 (1st Cir. 2009) ("It is well established that forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.") (internal quotation marks and citation omitted).

the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom . . . . " *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2009), quoting *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).  In doing so, the court "may consider 'documents the authenticity of which are not disputed by the parties; . . . documents central to plaintiffs' claim; [and] documents sufficiently referred to in the complaint.'" *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007), quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (punctuation and alteration in original).

HSBC argues that there are no material facts in dispute and that a judgment should enter enforcing the express terms of the Guaranty.  O'Neill resists by raising eighteen affirmative defenses and eight counterclaims as bars to the enforcement of the Guaranty, but does not deny that Brandywine is in default and that he has failed to repay any part of the money personally owed to HSBC.  O'Neill's affirmative defenses and counterclaims have a common thread woven around two propositions: (1) that HSBC must seek to recover any amount owed by Brandywine by proceeding against the Wilmington property before turning to O'Neill's personal Guaranty, because (2) HSBC allegedly represented to him that it would in the first instance seek

recourse against the collateral property in the event of a default.[4]

O'Neill's affirmative defenses are eviscerated by the plain language of the Guaranty.  The contention that HSBC must first seek recourse against the collateral is flatly contradicted by the "No Duty to Pursue Others" provision of the Guaranty, which explicitly states that HSBC may enforce its rights against O'Neill without first seeking to recover the debt from any pledged collateral.  Moreover, O'Neill "irrevocably, absolutely and unconditionally" guaranteed the performance of the loan, an undertaking that Massachusetts law will see strictly implemented.  *See New Bank of New England v. Baker*, 1993 WL 343671, at *2 (D. Mass. Aug. 26, 1993) ("[A] secured party may proceed against an unconditional guarantor without looking first to the principal debtor or collateral for satisfaction of the underlying debt."), citing

---

[4] O'Neill also contends that HSBC's demand for payment is barred because it exerted undue influence in negotiating and executing the loan documents, the Guaranty is an unconscionable contract of adhesion, and the equitable "doctrine of marshalling" requires HSBC to first seek recourse against the collateral property. O'Neill has identified no facts in support of these defenses.  Nor could he.  The first two claims are belied by O'Neill's sophistication in real estate matters and by the language of the Guaranty itself.  The third claim is based on a misunderstanding of the doctrine of marshalling, which is intended to protect the rights of a junior creditor against a senior creditor with a broader right of recourse.  It is not a doctrine intended to extend protection to a debtor.  *See In re Beacon Distribs., Inc.*, 441 F.2d 547, 548 (1st Cir. 1971) (marshalling may be invoked only where a "first creditor has available two properties of the *same debtor*.") (emphasis added).  Moreover, the Brandywine collateral and the personal funds of O'Neill are not property of the same debtor as the doctrine would otherwise require.

7

*Bowen v. Stackhouse*, 10 Mass. App. Ct. 859, 859 (1980) (payee not required to look to mortgages for satisfaction of debt before proceeding against guarantor).

O'Neill's attempt to hang the first recourse argument on the permissive language of § 6.1 of the Project Loan Agreement is no more persuasive.  As noted, the Guaranty explicitly states that HSBC need not first foreclose on the collateral property.  "[P]arties are bound by the plain terms of their contract."  *Hiller v. Submarine Signal Co.*, 325 Mass. 546, 550 (1950).  Where these are unambiguous, "the contract must be enforced according to its terms."  *Edmonds v. United States*, 642 F.2d 877, 881 (1st Cir. 1981).  The Guaranty also contains an integration clause, which states that the Guaranty is the "final, entire agreement" between HSBC and O'Neill, and "supersedes any and all prior commitments, agreements, representations, and understandings, whether written or oral . . . ."  As a matter of law, it is the Guaranty agreement between HSBC and O'Neill – and not the Project Loan Agreement between HSBC and Brandywine – that gives HSBC the right to recover from O'Neill.  *See First Nat'l Bank of Boston v. Ibarra*, 47 Mass. App. Ct. 660, 662-663 (1999) ("Instruments of guaranty, like other contracts, are enforceable in accordance with their terms, and *the rights of the parties must be ascertained from the terms of the guaranty instrument*.") (emphasis added), citing *Merrimack Valley Nat'l Bank v. Baird*, 372 Mass. 721, 725-726 (1977).

8

O'Neill's eight counterclaims also fail to raise any issue of material fact.[5] O'Neill points again to § 6.1 (providing that HSBC "can recover the Obligations by sale of the [collateral] Property") and the Loan-to-Value Ratio in the Project Loan Agreement in sounding the now familiar refrain that HSBC is obligated to move against the collateral property before turning to him personally for satisfaction of the debt.[6] Because, as discussed above, O'Neill's obligations are defined by the Guaranty and not by the Project Loan Agreement (to which he was not a party), his claims for breach of contract, breach of the covenant of good faith and fair dealing, and breach

----

[5] The specific counterclaims are for: (1) fraudulent inducement, (2) promissory estoppel, (3) negligent misrepresentation, (4) violation of Mass. Gen. Laws ch. 93A, (5) breach of covenant of good faith and fair dealing, (6) breach of duty to mitigate damages, (7) declaratory and injunctive relief due to hardship of enforcing the Guaranty without first seeking recourse against the collateral property, and (8) breach of contract.

[6] Even if O'Neill could entrench himself in the Project Loan Agreement, it does not by its express terms requires that HSBC first seek recourse against the collateral property. Section 6.1 provides that HSBC *can* sell the collateral, but it does not require it to do so. Similarly, the Loan-to-Value Ratio was a condition precedent to HSBC disbursing the loan, it does not bestow any enforceable rights on Brandywine or O'Neill. Nor can O'Neill credibly claim that HSBC's internal valuation induced him to enter the Guaranty. Under §§ 3.2 and 3.3 of the Guaranty, O'Neill warranted that he was independently familiar with the value of the collateral property, that he was not relying on the collateral as an inducement to enter the Guaranty, and that HSBC did not make any representation to induce O'Neill to execute the Guaranty.

of the duty to mitigate damages are nonstarters from the get-go.[7]

Next, because HSBC's alleged inducements and misrepresentations flatly contradict the express terms of the Guaranty, any reliance by O'Neill on their purported substance would have been per se unreasonable. *See Turner v. Johnson & Johnson*, 809 F.2d 90, 97 (1st Cir. 1986) (rejecting deceit claim where the alleged representation was flatly inconsistent with a contract provision specifically addressing the point at issue). O'Neill's claims for fraudulent inducement, negligent misrepresentation, promissory estoppel, and violation of Chapter 93A thus fail as a matter of law. *See Elias Bros. Restaurants, Inc. v. Acorn Enters., Inc.*, 831 F. Supp. 920, 926 (D. Mass. 1993) (fraud allegations failed to state a claim because alleged prior representations were directly contrary to terms of agreements and thus agreements "serve[d] as a bar to any reasonable reliance"); *Kuwait Danish Computer Co. v. Digital Equip. Corp.*, 438 Mass. 459, 468-469 (2003) (reliance on representation was unjustifiable as matter of law where it conflicted with the language

---

[7] O'Neill's contractually-based defenses and counterclaims are also barred by the express waiver provisions of the Guaranty. *See F.D.I.C. v. Elder Care Servs., Inc.*, 82 F.3d 524, 526 (1st Cir. 1996) ("Massachusetts law does permit a guarantor to waive defenses, but probably such a waiver could not immunize bad faith or fraud.") (citation omitted); *United States v. Mallett*, 782 F.2d 302, 303 (1st Cir. 1986) ("The case law is replete with examples of guarantors attempting to traverse [ ] standard-form guaranty language. The courts, however, have uniformly upheld the 'waiver-of-defenses' language.").

of the governing document); *Zuckerman v. McDonald's Corp.*, 35 F. Supp. 2d 135, 147 (D. Mass. 1999) ("Because plaintiff's common law misrepresentation claims fail, plaintiffs are unable, as a matter of law, to proceed on their chapter 93A claim."); *see also Merillat Indus., Inc. v. Johnston*, 865 F. Supp. 60, 64 (D. Mass. 1994) ("With respect to the allegation of fraudulent inducement, courts have held that even it is not a defense to an absolute and unconditional personal guarantee."); *Sound Techniques, Inc. v. Hoffman*, 50 Mass. App. Ct. 425, 432-433 (2000) (in a commercial transaction, a merger clause precludes liability for negligent misrepresentation).

Finally, O'Neill alleges that, apart from the language of the Project Loan Agreement, HSBC "made intentional, false statements of fact" concerning its intentions regarding the collateral, and that these allegations are sufficient in and of themselves to defeat the motion for judgment on the pleadings. While O'Neill has it right that the court, under present circumstances at least, must accept his allegations of fact as true, O'Neill pleads no such facts. He makes only conclusory assertions about unidentified statements that unidentified representatives of HSBC are said to have made. Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." O'Neill, in other words, had an obligation in raising claims of fraudulent misrepresentation to "specify[] the false statements and by whom they were made"

11

and "set[] forth specific facts that make it reasonable to believe that [counterclaim] defendant knew that a statement was materially false or misleading." *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009) (citation omitted). Because O'Neill has not satisfied even the outlines of Rule 9(b), there is no issue of material fact preventing the allowance of HSBC's motion.

Perhaps in recognition of the weaknesses of his claims, O'Neill asks the court for leave to replead his counterclaims and affirmative defenses. Fed. R. Civ. P. 15(a) reflects a liberal amendment policy by counseling courts to "freely give leave when justice so requires." *See O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 154 (1st Cir. 2004). There is, however, a conspicuous exception when any attempt to amend would be futile. *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996). That is the case here. While it is clear under Massachusetts law that a party may not contract out of fraud, *see Bates v. Southgate*, 308 Mass. 170, 182 (1941), it is equally clear that, as discussed above, reliance on representations that contradict the terms of a written and integrated agreement between parties of equal standing and sophistication is unreasonable and cannot support a claim for fraud. *See Starr v. Fordham*, 420 Mass. 178, 188 (1995) ("[I]f the contract was fully

12

negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue."), quoting *Turner*, 809 F.2d at 97.  Because O'Neill cannot plead around the express language of the Guaranty, any repleading would be futile.

ORDER

For the foregoing reasons, HSBC's motion for judgment on the pleadings is <u>ALLOWED</u>.  O'Neill's motion to replead is <u>DENIED</u>.  The Clerk will enter Judgment for HSBC and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE